Asim K. Desai  (SBN 175402)
adesai@grsm.com
Margaret M. Drugan  (SBN 175324)
mdrugan@grsm.com
Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071
(213) 576-5000/FAX (213) 680-4470

Attorneys for Plaintiff,
ATLANTIC SPECIALTY INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DICK CLARK PRODUCTIONS, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Atlantic Specialty Insurance Company, by and through its attorneys, brings this action seeking declaratory relief against Defendant Dick Clark Productions, Inc.  Atlantic Specialty Insurance Company alleges and seeks relief as follows:

**INTRODUCTION**

Pursuant to 28 U.S.C. § 2201, Plaintiff Atlantic Specialty Insurance Company ("ASIC") brings this action for Declaratory Judgment against its named insured, Defendant Dick Clark Productions, Inc. ("DCP").

///

1

This matter arises out of DCP's production of a live tight rope walk over the mouth of a volcano and damage to the production equipment that DCP leased from its vendors.

The vendors seek repair and replacement costs from DCP for corrosion damage to the equipment that was caused by exposure to gases released from the volcano during production.

ASIC seeks a declaration that the terms, conditions and exclusions in the relevant ASIC policy preclude coverage for the property damage to the vendors' equipment.

## PARTIES, JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between plaintiff and defendant, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

2. ASIC is a corporation formed and existing under the laws of the State of New York with its principal place of business in Plymouth, Minnesota.

3. DCP is a corporation formed and existing under the laws of the State of Delaware with its principal place of business in the Los Angeles, California.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (2), because a substantial part of events giving rise to the claim occurred in this District.

## THE CLAIM

5. Between February 24, 2020 and March 6, 2020, DCP produced "Volcano Live! With Nik Wallenda," during which Nik Wallenda completed his longest and highest tightrope stunt by walking 1,800 feet on a tightrope across the volcanic opening of the Masaya Volcano (and 2,000 feet above the volcano's lava) in Nicaragua (the "Production").

6. On March 4, 2020, Nik Wallenda completed his tightrope walk across the volcanic opening of the Masaya Volcano (the "Event").

7. Prior to Production, DCP rented Production equipment from vendors, including United Staging and Rigging, Boom! Production, Musco Sports Lighting, LLC, Bexel, and Lighting Design Group/Filmtrade (the "DCP Vendors").

8. DCP Vendors seek approximately $710,000 from DCP for replacement and repair costs of the Production equipment that corroded during the course of Production.

9. DCP seeks coverage for the replacement and repair costs of the Production equipment pursuant to the production policy that ASIC issued to DCP, which afforded coverage for covered production props, sets and third-party property damage subject to certain terms, conditions and exclusions, including a corrosion exclusion (the "Policy").

10. DCP did not procure corrosion coverage for the Production equipment from ASIC.

11. During Production, and several days prior to the Event, two of the stabilizer cables for the Event corroded and required replacement.

12. DCP did not notify ASIC of the corroded stabilizer cables or their replacement during Production.

13. DCP did not take any measures to minimize, avoid or diminish damage to the Production equipment after DCP became aware of the stabilizer cables' corrosion.

14. Prior to ASIC's issuance of the Policy, DCP represented to ASIC that the DCP crew would protect the Production equipment from exposure to volcanic gases.

15. DCP represented to ASIC that the Production equipment would be covered with tarps to protect it from exposure to volcanic gases during Production.

16. DCP decided to not cover the Production equipment with tarps because of wind conditions.

17. DCP did not take any other measures to protect the Production equipment during Production after DCP decided to not use tarps.

18. DCP did not notify ASIC that DCP had decided to leave the Production equipment exposed to the volcanic gases during Production and during the Event.

19. During Production and prior to the Event, the Production crew noticed a yellow sticky substance growing on the middle of the cables extended across the volcano.

20. The Production crew was unable to remove the yellow sticky substance from the cables.

21. DCP did not notify ASIC that it had discovered a yellow sticky substance on the middle of the cables.

22. Based on information and belief, the yellow sticky substance growing on the middle of the cables during Production was the beginning of the corrosive process.

23. DCP did not take any measures to minimize, diminish or avoid damage to the Production equipment during Production after it became aware of the yellow sticky substance.

24. DCP decided to proceed with Production and the Event in spite of the damaged Production equipment, because of the costs that would have resulted from Event cancellation.

25. After Production and the Event, DCP returned the corroded Production equipment to the DCP Vendors.

26. Based on information and belief, DCP has not notified DCP's foreign liability or Event cancellation insurers of the Production conditions or of the property damage and corrosion claims being made by the DCP Vendors.

27. On March 27, 2020, DCP notified ASIC of the damage to the Production equipment.

28. ASIC retained independent adjusting firm, McLarens, to inspect and evaluate the damage to the Production equipment. A true and correct copy of McLarens' initial report without enclosures is attached as Exhibit A.

29. McLarens completed six field inspections between May 7, 2020 and May 29, 2020 in Connecticut, Iowa, Texas, Florida, and New York.

30. McLarens concluded that equipment corroded over the course of Production and corroborated the DCP Vendors' reports regarding the corrosion of the Production equipment.

31. On July 3, 2020, ASIC disclaimed coverage for the damage to the Production equipment based, in part, on the ASIC Policy provision that excludes coverage for corrosion and rust (the "Disclaimer Letter"). A true and correct copy of the ASIC Disclaimer Letter is attached as Exhibit B.

32. In the Disclaimer Letter, ASIC also reserved its rights to disclaim coverage pursuant to the ASIC Policy loss conditions due to DCP's failure to use due diligence to diminish the damage and corrosion to the Production equipment and due to its failure to take reasonable steps to protect and prevent further damage and corrosion to the Production equipment.

33. On August 13, 2020, ASIC received correspondence from DCP's coverage counsel disputing the coverage position set forth in the Disclaimer Letter (the "Pushback Letter"). A true and correct copy of DCP's Pushback Letter is attached as Exhibit C.

## THE POLICY

34. ASIC issued the Policy, which is a specialty production insurance contract, to DCP, policy number DIO1289-07, for the policy period of July 29, 2019 to July 29, 2020 (the "ASIC Policy"). A certified copy of the ASIC Policy is attached hereto as Exhibit D and includes some redactions related to premium amounts.

35. **POLICY CONDITIONS**

The ASIC Policy affords coverage subject to "loss conditions" that state as follows:

    **I.    LOSS CONDITIONS**

        \*    \*    \*

    **e.  Due Diligence Clause**

    You shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstance likely to give rise to a loss or claim insured under this policy. This policy extends to indemnify you for any additional expenses necessarily incurred by you to avoid or diminish such loss or claim, subject to any deductible provisions of this policy. This indemnification will not increase the limit of insurance, and we will not pay more for any loss than the amount that would have been payable had you not incurred the additional expenses.

    **f.  Duties in the Event of Loss or Damage**

    In case of a loss or damage to which this insurance may apply, you must see that the following duties are performed:

        (2)    Minimize Loss or Damage – Take all reasonable steps to protect the property and Covered Persons from further damage and minimize the loss. Keep a record of your expenses in doing so for consideration in the settlement of the claim. This will not increase the limit of insurance.

36. **COVERAGE PARTS**

The Policy's coverage grant for Coverage A. Props, Sets & Wardrobe reads as follows:

**COVERAGE A. PROPS, SETS & WARDROBE**

**I.    COVERAGE**

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss. The loss or damage must commence during the policy period.

    a. Covered Property, as used in this Coverage, means:

        (1) Your scenery, costumes, theatrical props and related theatrical property; and

        (2) Similar property of others in your care, custody or control and for which you are legally liable;

that are used or intended to be used in an "Insured Production" or for other purposes specified in an endorsement to this policy.

\*     \*     \*

    c. Covered Causes of Loss

Covered Causes of Loss means risks of direct physical loss or damage to Covered Property except those causes of loss listed in the Exclusions.

37. The Policy's coverage grant for Coverage C, Third Party Property Damage reads as follows:

**I.    COVERAGE**

We will pay those sums that the Insured becomes legally obligated to pay as damages because of direct physical loss of or damage, including loss of use, to Covered Property, caused by accident and arising out of any Covered Cause of Loss during the policy period.  We will have the right and duty to defend the Insured against any "Suit" seeking those

damages. However, we will have no duty to defend the Insured against any "Suit" seeking damages for direct physical loss or damage to which this insurance does not apply. We may, at our discretion, investigate and settle any claim or "Suit" that may result. But:

    (1) The amount we will pay for damages is limited, as described in Part II. – Limits of Insurance; and

    (2) Our right and duty to defend ends when we have used up the Limit of Insurance in the payment of judgments and settlements.

a. Covered Property, as used in this Coverage, means tangible property of others in an Insured's care, custody or control that is used or intended to be used in connection with an "Insured Production" or for other purposes specified in an endorsement to this policy.

b. Property Not Covered

Covered Property does not include:

    (1) Personal property rented to or leased by an Insured, except for loss of use of such property that is covered for direct physical damage under Coverage A. Props, Sets & Wardrobe or Coverage D. Miscellaneous Equipment of this policy;

c. Covered Cause of Loss

Covered Causes of Loss means risks of direct physical loss or damage to Covered Property except those causes of loss listed in the Exclusions.

38. The Policy's coverage grant for Miscellaneous Equipment reads as follows:

**I.     COVERAGE**

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss. The loss or damage must commence during the policy period.

    a.    Covered Property, as used in this Coverage, means:

        (1)    Your personal property, including, but not limited to cameras, camera equipment, sound and lighting equipment, portable electrical equipment, mechanical effects equipment, grip equipment and "Mobile equipment"; and

        (2)    Similar property of others in your care, custody or control and for which you are legally liable; that are used or intended to be used in an "Insured Production" or for other purposes specified in an endorsement to this policy.

\*  \*  \*

    c.    Covered Causes of Loss

Covered Causes of Loss means risks of direct physical loss or damage to Covered Property except those causes of loss listed in the Exclusions.

39.     The Policy's pollution exclusion applies to all coverage parts of the Policy and states:

**V.     EXCLUSIONS APPLICABLE TO ALL COVERAGES OF THIS POLICY**

    b.    We will not pay for loss or damage caused by or resulting from any of the following:

\*  \*  \*

(3) Discharge, dispersal, seepage, migration, release or escape of "Pollutants" or environmental impairment of any kind.

But if any of these results in a Covered Cause of loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\* \* \*

(5) Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of the loss.

40. Coverage A, Props, Sets & Wardrobe and Coverage D, Miscellaneous Equipment exclude coverage for corrosion, as follows:

We will not pay for loss or damage caused by or resulting from any of the following:

a. Wear and tear; any quality in the property that causes it to damage or destroy itself; hidden or latent defect; gradual deterioration; depreciation; mechanical breakdown or electrical breakdown; insects; vermin, or rodents; corrosion, rust, dampness, cold or heat.

41. Coverage A, Props, Sets & Wardrobe, Coverage C, Third Party Property Damage and Coverage D, Miscellaneous Equipment exclude coverage for intentional acts, as follows:

> We will not pay for loss or damage caused by or resulting from any of the following:
>
> > Intentional acts committed by or at the direction of any insured.

## FIRST CAUSE OF ACTION

(Declaratory Relief)

42. ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

43. The Policy contains an exclusion for loss or damage caused by or resulting from among other perils, "[c]orrosion, rust, dampness, cold or heat," and applies to Coverage A for Props, Sets & Wardrobe and Coverage D for Miscellaneous Equipment.

44. Upon information and belief, the damage to the Production equipment was caused by or resulted from corrosion.

45. "Covered Property," as defined by Coverage C for Third Party Property Damage, does not include the property rented by DCP except for loss of use of the rented property otherwise covered for direct physical damage under Coverage A for Props, Sets and Wardrobe or Coverage D for Miscellaneous Equipment.

46. ASIC is entitled to a declaration that Coverage A for Props, Sets & Wardrobe and Coverage D for Miscellaneous Equipment do not afford coverage for damage to the Production equipment pursuant to the exclusion for damage caused by corrosion.

47. ASIC is likewise entitled to a declaration that Coverage C for Third Party Property Damage does not afford coverage for damage to the Production equipment, because corrosion of Production equipment is not direct physical damage covered under Coverage A for Props, Sets and Wardrobe or Coverage D for Miscellaneous Equipment.

## SECOND CAUSE OF ACTION

(Declaratory Relief)

48. ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

49. The Policy contains an exclusion that precludes coverage for loss or damage caused by or resulting from intentional acts committed by or at the direction of any insured.

50. Upon information and belief, the damage to the Production equipment was cause by or resulted from DCP intentionally leaving the Production equipment exposed to volcanic gases after becoming aware the Production equipment was corroding.

51. ASIC is therefore entitled to a declaration that coverage under the Policy does not apply to the loss or damage to the Production equipment, pursuant to the intentional acts exclusion.

## THIRD CAUSE OF ACTION

(Declaratory Relief)

52. ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

53. The Policy contains a pollution exclusion for loss or damage caused by or resulting from discharge, dispersal, seepage, migration, release or escape of "Pollutants" or environmental impairment of any kind.

54. The Policy defines "Pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

55. The pollution exclusion likewise specifically precludes coverage for "[N]eglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of the loss."

56. Based upon information and belief, the loss and damage to the Production equipment was caused by discharge, dispersal, seepage, migration, release or escape of volcanic gases, vapors, fumes, acids and alkalis.

57. Based upon information and belief, the loss and damage to the Production equipment was caused in part by DCP's neglect to use "all reasonable means to save and preserve property from further damage at or after the time of the loss."

58. ASIC is therefore entitled to a declaration that coverage under the Policy does not apply to the loss or damage to the Production equipment, because the pollution exclusion precludes coverage.

## FOURTH CAUSE OF ACTION

(Declaratory Relief)

59. ASIC repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

60. The Policy's loss conditions required that DCP use due diligence in doing all things reasonably practicable to avoid or diminish any loss or circumstance likely to give rise to a loss or claim insured under the Policy.

61. The Policy's loss conditions required that DCP take all reasonable steps to protect the Production equipment from damage and to minimize loss.

62. Based on information and belief, DCP did not use due diligence and did not do anything reasonably practicable to avoid or diminish any loss or circumstance that gave rise to the loss or claims made by the DCP Vendors under the Policy for damage to the Production equipment.

63. Based on information and belief, DCP did not take any reasonable steps to protect the Production equipment from damage or to minimize loss.

64. ASIC is therefore entitled to a declaration that ASIC's duties under the Policy, if any, have been excused by DCP's failure to comply with condition precedents of the Policy.

**WHEREFORE,** Plaintiff Atlantic Specialty Insurance Company prays for relief as follows:

1. For a declaration of the rights, duties and obligations of the parties herein as follows:

   a. A declaration that Plaintiff Atlantic Specialty Insurance Company is not obligated to pay for any costs to replace or repair the Production equipment; and

   b. A declaration that Plaintiff Atlantic Specialty Insurance Company is not obligated to pay for any costs resulting from the DCP Vendors' loss of use of the Production equipment.

2. For costs of suit; and

3. For such other and further relief as the Court may deem just and proper.

Dated:  October 6, 2020          GORDON REES SCULLY MANSUKHANI, LLP

By: _____
ASIM K. DESAI
MARGARET M. DRUGAN
Attorneys for Plaintiff,
ATLANTIC SPECIALTY INSURANCE COMPANY